**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM SUAREZ, | No. 17cv2767 (EP) |
| Petitioner, | |
| v. | |
| STEVEN JOHNSON and THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, | OPINION |
| Respondents. | |

**PADIN, District Judge.**

*Pro se* Petitioner William Suarez, a prisoner at New Jersey State Prison, seeks a writ of habeas corpus under 28 U.S.C. § 2254 vacating his state court conviction. D.E. 1 ("Pet." or "Petition"). Respondents Stephen Johnson and the New Jersey Attorney General oppose the petition. D.E.s 9 ("Opp'n"), 24 ("Supp. Opp'n"). The Court decides the Petition without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

For the reasons below, the Court will **DENY** Grounds One, Two, and Three. Grounds Four and Five are **DENIED in part** and **DENIED AS PROCEDURALLY DEFAULTED in part**. The Court **DENIES** a certificate of appealability.

I.      **BACKGROUND**[1]

A.      **The Crime**

On December 30, 2003, Petitioner was riding in a 1988 Honda Accord with Tomas Gonzalez, Josanna Robles, and Stephanie McDougald.  *State v. Suarez*, No. A-6038-05T4, 2008 WL 834323, at *2 (N.J. Super. Ct. App. Div. Mar. 31, 2008) ("*Suarez I*").  The Honda belonged to Petitioner's girlfriend, Vanessa Cambert.  *Id.*

The Honda collided with a car that was driven by Joshua Meltzer.  *Id.*  Gonzalez drove away from the scene of the accident, and Meltzer followed him, attempting to pull the Honda over.  *Id.*  Gonzalez eventually pulled over in a parking lot, and Meltzer confronted Gonzalez and asked for his insurance information.  *Id.*  Petitioner and Gonzalez refused to provide the information and "attempted to 'negotiate' with Meltzer."  *Id.*  Meltzer took out his cell phone to call the police.  *Id.*  Petitioner grabbed Meltzer's cell phone and threw it across the parking lot.  *Id.*  Meltzer got back into the driver's seat of his car but left the door open.  *Id.*  Petitioner shot Meltzer in the back of the head with a .38 caliber handgun.  *Id.*  Gonzalez drove the Honda away from the scene and Meltzer died from his injury.  *Id.*

B.      **The Investigation**

On December 31, 2003, an Elizabeth motorcycle police officer saw a 1988 Honda Accord and observed it matched the description of a car involved in a carjacking earlier that day in Union and several robberies of fast food or convenience stores in the area.  *Id.*  The officer stopped the car, then driven by Jason Branch, its only occupant.  *Id.*  "The officer began questioning Branch

---

[1] The Court defers to the state courts' factual determinations pursuant to 28 U.S.C. § 2254(e)(1) and adopts the facts as set forth by the New Jersey Superior Court Appellate Division ("Appellate Division") in its direct appeal and collateral review opinions.

about the carjacking, and Branch volunteered that he was not involved in a bank robbery. This was unusual, because the officer did not mention a bank robbery." *Id.* Branch told the officer that "three other occupants of the Honda had recently taken a taxi to go elsewhere. The police contacted the taxi company, and learned that the three occupants were taken to 579 Madison Avenue." *Id.*

Detectives Stephen Owsiany and Keith White went to 579 Madison Avenue where Owsiany spoke to the building's owner, Paul Guillen, and showed him composite sketches of the robbery suspects. *Id.* at *3. Guillen believed the sketches resembled the occupants of the third-floor apartment. *Id.* Owsiany called more officers to the scene. *Id.* Sergeant William Pinho responded and went to the front door of the apartment and Owsiany went to the rear. *Id.* Pinho knocked on the door and Cambert answered the door. *Id.* Pinho identified himself and stated that he was investigating a robbery and carjacking. *Id.* Cambert invited Pinho into the apartment. *Id.*

Once inside, Pinho "saw a woman run down a hallway toward the rear of the apartment." *Id.* He asked Cambert who else was in the apartment, and she responded nobody was. *Id.* "Recognizing that this investigation involved individuals involved in violent crimes, who were armed with firearms during their commission, Pinho feared for his safety and went to the area of the apartment to which the woman apparently secreted herself. Other officers entered the apartment." *Id.* Pinho did not see anyone in the other room, but he did see a piece of plywood that was covering the entry to a small attic crawl space. *Id.*

After removing the plywood, he saw two women, later identified as Robles and McDougald, hiding in the crawl space. *Id.* Pinho ordered the women to come out and pulled one out when they refused. *Id.* Pinho was able to see "large quantities of currency and unopened cellophane packets containing lottery tickets" with his flashlight. *Id.* Owsiany entered through

the back door and "immediately directed that the other officers refrain from searching the apartment until after a search warrant was obtained." *Id.* Robles and McDougald were arrested, as were Cambert, Gonzalez, and his girlfriend. *Id.* Gonzalez and his girlfriend were hiding in Gonzalez's bedroom. *Id.*

During these events, Petitioner arrived at the apartment building. *Id.* Officer Lateef Banks, who was securing the perimeter outside, asked Petitioner if he lived in the building. *Id.* Petitioner stated he lived on the third floor and Banks detained him for questioning. *Id.* Petitioner saw the arrestees being escorted out of the building and told Banks "Lateef, I got guns and money in the safe and the girls have nothing to do with nothing that's going on." *Id.* at *4.

Owsiany obtained a search warrant for the apartment and commenced a search. *Id.* "In the safe in the crawl space in [Petitioner's] bedroom [the police] found several guns, including a .38 caliber revolver containing two live rounds. They also found other ammunition and more than $5,000 in cash. In the safe in Gonzalez's room, the police found illegal drugs and drug paraphernalia." *Id.* Owsiany interviewed Petitioner on January 1, 2004 and Petitioner made statements about the robberies and carjacking. *Id.* Detective Ismael Olivero, who was investigating Meltzer's murder, interviewed Petitioner after learning about the arrests at 579 Madison Avenue. *Id.* Petitioner admitted that he shot Meltzer. *Id.*

### C.   Trial Court Proceedings

Petitioner was charged with four counts related to Meltzer's death: first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2); third-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); and third-degree unlawful possession of a handgun without a permit, N.J.S.A.

2C:39-5(b).[2]  *Suarez I*, 2008 WL 834323, at *1.  Prior to trial, Petitioner moved to suppress his statements to police and the physical evidence seized from the apartment.  1Ta; 1Tb.[3]  The trial court denied both motions.  2T.

Petitioner was convicted of all charges.  *Suarez I*, 2008 WL 834323, at *1.  The trial court sentenced him to an aggregate term of 70 years "of which he must serve 85% of sixty years plus an additional two years before being eligible for parole."  *Id.*

### D.    Direct Review Proceedings

Petitioner timely appealed in the Appellate Division.  *Id.*  He challenged the denial of his motions to suppress his statements and the physical evidence.  *Id.*  He also argued that his right to a fair trial was violated due to testimony that his apartment was searched pursuant to a warrant and when Olivero stated he spoke to "a certain person that I can't mention."  *Id.*  Finally, he challenged the sentence imposed by the trial court.  *Id.*  The Appellate Division rejected all of Petitioner's arguments and affirmed his convictions and sentence.  *Id.*  The New Jersey Supreme Court denied certification on September 15, 2010.  *State v. Suarez*, 203 N.J. 439 (2010); D.E. 9-4.

---

[2]  Six other counts charging carjacking, robbery, and other offenses were severed from these offenses.  *Suarez I*, 2008 WL 834323, at *1.

[3]  1Ta - Transcript of pre-trial motions, dated April 19, 2005 (part one).  D.E. 9-10; 1Tb - Transcript of pre-trial motions, dated April 19, 2005 (part two).  D.E. 9-11; 2T - Transcript of pre-trial motion, dated May 17, 2005.  D.E. 9-12; 3T - Trial transcript, dated February 28, 2006.  D.E. 9-13; 4T - Trial transcript, dated March 1, 2006.  D.E. 9-14; 5Ta - Trial transcript, dated March 2, 2006 (part one).  D.E. 9-15; 5Tb - Trial transcript, dated March 2, 2006 (part two).  D.E. 9-16; 6T - Trial transcript, dated March 7, 2006.  D.E. 9-17; 7Ta - Trial transcript, dated March 8, 2006 (part one).  D.E. 9-18; 7Tb - Trial transcript, dated March 8, 2006 (part two).  D.E. 9-19; 8T - Trial transcript, dated March 9, 2006.  D.E. 9-20; 9Ta - Trial transcript, dated March 13, 2006 (part one).  D.E. 9-21; 9Tb - Trial transcript, dated March 13, 2006 (part two).  D.E. 9-22; 10T - Trial transcript, dated March 14, 2006.  D.E. 9-23; 11T - Sentencing transcript, dated April 28, 2006.  D.E. 9-24.

### E.    First Collateral Review Proceedings

Petitioner filed a petition for post-conviction review ("PCR") on August 31, 2010.  D.E. 9-5 at 68.  PCR counsel was appointed to represent Petitioner and filed a brief on his behalf.  PCR counsel argued that trial counsel was ineffective because he did not properly investigate the case, failed to present a "favorable witness," failed to provide a meaningful defense, failed to file a motion for a directed verdict, and failed to raise mitigating factors at sentencing.  D.E. 9-5 at 78-80.  PCR Counsel also argued that appellate counsel was ineffective for failing to "'argue the charge of criminal trespass.'"  *Id.* at 81.

Petitioner submitted a *pro se* brief raising additional ineffective assistance of counsel arguments: trial counsel was ineffective for failing to adequately consult with him, *id.* at 92; failing to file a motion for a new trial, *id.* at 96; failing to call Guillen as a witness, *id.* at 97; failing to effectively cross-examine the State's witnesses, *id.* at 100; failing to consult with Petitioner regarding defenses and trial strategy, *id.* at 102; failing to hire an expert to opine about Petitioner's understanding of his *Miranda*[4] rights, *id.*; failing to file a *Batson*[5] challenge to the exclusion of Hispanic jurors, *id.* at 103; failing to object to state witnesses appearing in prison garb, *id.* at 107; and failing to raise certain claims on appeal, *id.* at 113.  Petitioner also asserted that the trial court erred by failing to give a limiting instruction about the use of the co-defendants' guilty pleas and failing to properly instruct the jury on corroboration.  *Id.* at 108-13.

The PCR court denied all claims without an evidentiary hearing on August 28, 2013.  *Id.* at 83.  Both parties waived oral argument.  *Id.*  Petitioner appealed to the Appellate Division.  *Id.* at 84.  On appeal, Petitioner argued that the case must be remanded because the PCR court did not

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[5] *Batson v. Kentucky*, 476 U.S. 79 (1986).

conduct oral argument, the PCR court erred in failing to hold an evidentiary hearing on Petitioner's claim that trial counsel failed to adequately investigate his case, and because the PCR court did not address Petitioner's *pro se* arguments. *State v. Suarez*, No. A-2701-13T2, 2016 WL 1689724, at *1 (N.J. Super. Ct. App. Div. Apr. 28, 2016) ("*Suarez II*").

The Appellate Division found "insufficient merit in [Petitioner's] arguments to warrant further discussion in a written opinion" and "affirm[ed] substantially for the reasons set forth by [the PCR court's] well-reasoned and thoughtful written opinion." *Id.* (citing N.J. Ct. R. 2:11–3(e)(1)(E)). It found no error in the PCR court's decision not to hold oral argument, partly because the parties had waived it. *Id.* The New Jersey Supreme Court denied certification on January 20, 2017. *State v. Suarez*, 228 N.J. 487 (2017).

### F.    Federal Court Proceedings

Petitioner filed this Petition on April 21, 2017. Pet. He raises five grounds for relief:

- **Ground One**: Asserts the trial court erred by denying the motion to suppress the evidence recovered from Petitioner's apartment. *Id.* at 22.

- **Ground Two**: Argues the trial court erred by denying the motion for a mistrial based on Olivero's reference in his trial testimony to "a person I can't mention." *Id.* at 23.

- **Ground Three**: Raises an ineffective assistance of trial counsel claim based on the failure to call Guillen as a witness to testify about the police entry into Petitioner's apartment. *Id.* at 24.

- **Ground Four**: Argues PCR counsel was ineffective by failing to argue that trial counsel was ineffective for failing to challenge Owsiany's search warrant affidavit ("Warrant Argument"). *Id.* at 25.

7

- **Ground Five**: Contains two arguments. First, PCR counsel was ineffective by failing to argue that appellate counsel should have raised that trial counsel failed to sufficiently argue for suppression based on an improper entry into Petitioner's apartment ("Entry Argument") *Id.* at 27. Second, PCR counsel should have raised arguments about the retroactive application of a recent New Jersey Supreme Court decision, *State v. Davila*, 203 N.J. 97 (2010), that limited the use of warrantless protective sweeps ("*Davila* Argument"). *Id.* at 22-28.

Petitioner also moved for a protective stay of the habeas proceedings. D.E. 4. He admitted that Grounds Four and Five were not exhausted and stated that he was in the process of pursuing a second PCR petition in the state courts. *Id.* at 4-5. Respondents opposed the Petition on July 28, 2017. Opp'n. They did not oppose the stay motion. The Court granted Petitioner's motion for a stay and administratively terminated the habeas proceedings on November 7, 2017. D.E. 16.

### G.    Second PCR Proceeding

Petitioner filed his second PCR petition on February 14, 2017, raising the Warrant, Entry, and *Davila* Arguments. D.E. 24-2 at 88-89. On March 15, 2017, the second PCR court dismissed the second petition as untimely under New Jersey Court Rule 3:22-12(a)(2)(C). *Id.* at 94. Petitioner appealed to the Appellate Division on April 24, 2017. *Id.* at 100.[6]

The Appellate Division dismissed the appeal *sua sponte* on September 20, 2018. D.E. 24-5. The Appellate Division agreed that the second PCR petition was untimely under state law. *Id.* at 3. The New Jersey Supreme Court denied certification on April 4, 2019. D.E. 18 at 5.

---

[6] Petitioner filed the Petition while this appeal was pending.

**H.     Habeas Proceedings Continued**

On May 2, 2019, Petitioner filed a motion for an extension of time to file a reply to Respondents' opposition papers.  D.E. 18.  The Court interpreted the request as a representation that the state court proceedings had concluded and reopened this matter.  D.E. 21.[7]  On December 13, 2021, Respondents submitted a supplemental brief and appendix addressing the second PCR proceedings.  Supp. Opp'n.  Petitioner submitted a supplemental reply on January 4, 2022.  D.E. 25 ("Supp. Reply").

## II.     LEGAL STANDARD

"The federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases."  *Shoop v. Hill*, 586 U.S. 45, 48 (2019).  A federal court may entertain a petition for writ of habeas corpus on behalf of a person in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[7] The matter was reassigned to the undersigned on June 28, 2022.  D.E. 26.

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[A] state-court decision is an unreasonable application of [the Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014). "This means that a state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Shoop*, 586 U.S. at 48 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). The Court must presume that the state court's factual findings are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). *See Brown v. Davenport*, 596 U.S. 118, 134 (2022) ("[E]ven a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief.").

## III.    DISCUSSION

### A.  Ground One is Barred by *Stone v. Powell*

In Ground One, Petitioner argues the trial court erred by denying his motion to suppress the physical evidence seized from his apartment. Pet. at 22. He asserts that "[b]ecause there was no testimony by Vanessa Cambert, the woman whom [supposedly] consented to Detective Pinho entering her and the petitioner's apartment, the testimony of [Pinho] alone can not be taken as

10

actual fact of evidence in this case." *Id.* Respondents argue this claim is barred by Supreme Court precedent in *Stone v. Powell*, 428 U.S. 465 (1976). Opp'n at 22. The Court agrees and will **DENY** Ground One.

In *Stone*, the Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494. "The 'full and fair' hearing requirement is satisfied if the state courts provided the petitioner with a pre-trial suppression hearing and the Fourth Amendment claim was considered on appeal." *Small v. Pierce*, 226 F. Supp. 3d 299, 307 (D. Del. 2016) (citing *United States ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *United States ex rel. Petillo v. New Jersey*, 562 F.2d 903, 906–07 (3d Cir. 1977)). "[A] petitioner can avoid the *Stone* bar only by demonstrating that the state system contains a structural defect that prevented full and fair litigation of the Fourth Amendment claim." *Brown v. Johnson*, No. 16-6066, 2019 WL 3712212, at *4 (D.N.J. Aug. 6, 2019) (citing *Marshall v. Hendrick*s, 307 F.3d 36, 82 (3d Cir. 2002)). "An erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the bar." *Marshall*, 307 F.3d at 82.

The trial court conducted a hearing on Petitioner's motion to suppress on April 19, 2005. 1Ta; 1Tb. Petitioner challenged the ruling on direct appeal, and the Appellate Division rejected the claim on its merits. *Suarez I*, 2008 WL 834323, at *8. The New Jersey Supreme Court declined to grant certification. *State v. Suarez*, 203 N.J. 439 (2010); D.E. 9-4. Petitioner received a full and fair opportunity to litigate his Fourth Amendment claim, and his argument that the trial court erred by "[d]enying the motion to suppress without hearing from a key witness," D.E. 14 at 6, "is at most alleging that the Fourth Amendment claim[] [was] decided incorrectly or incompletely by

11

the New Jersey courts, allegations which are insufficient to surmount the *Stone* bar." *Marshall*, 307 F.3d at 82; *see also Jeffes*, 571 F.2d at 766 ("[*Stone*] is an insurmountable obstacle to habeas corpus relief, since the [state] courts have afforded a full and fair opportunity to litigate the question of the fourth amendment violation. Their decision, even if erroneous, is now beyond Article III review."). Accordingly, the Court will **DENY** Ground One as it is barred by *Stone* and cannot serve as a valid basis for habeas relief.

### B. Petitioner Has Not Shown that the Trial Court Erred by Denying a Mistrial

In Ground Two, Petitioner argues that the trial court violated his right to a fair trial by denying his request for a mistrial after Olivero's cross-examination. Pet. at 23. Trial counsel asked Olivero how many times he had told Gonzalez that he "would be implicated if he didn't give a statement." 7Ta98:13-14. Olivero responded, "only once, because we utilized a certain person, that I can't mention." *Id.*; 7Ta98:15-16. Trial counsel immediately objected, and the trial court sustained the objection and ordered Olivero "to answer the questions without commentary." 7Ta98:17-23. Olivero clarified on redirect that Gonzalez met with his sister, Maria Parraguez, before giving his statement to Olivero.[8] 7Ta126:13-17.

Trial counsel moved for a mistrial, arguing that Olivero's comment during cross-examination would cause the jury "to start speculating as to why is there a witness out there who this detective can't talk about." 7Tb171:3-4. The trial court "was satisfied that the potential problem raised by the defense was cured by the State's redirect examination. . . . By clarifying that it was Parraguez who spoke to her brother before the police obtained a statement from him,

---

[8] Prior to testifying, Olivero was instructed that he was not to discuss the contents of any statements taken from Parraguez. 7Ta48:18-24. Trial counsel objected when the State asked Olivero if he had spoken with Parraguez, and the trial court cautioned Olivero again. 7Ta51:24 to 52:11.

there would be no basis for any speculation by the jury about the previously unidentified person Olivero referred to." *Suarez I*, 2008 WL 834323, at *13. During the jury charge, the trial court instructed the jury that the verdict should be based on "the testimony that you've heard and seen from this witness box and exhibits that have been admitted into evidence" and that "speculation, conjecture and other forms of guessing play[s] no role in the performance of your duties." 9Tb96:10-12, 97:3-5.

Petitioner argues "that Detective Olivero's comment during cross-examination, where his reference to 'a certain person I can't mention' unfairly prejudiced [P]etitioner's right to a fair trial and warranted a mistrial." Pet. at 23. This claim was exhausted during Petitioner's direct appeal. *Suarez I*, 2008 WL 834323, at *13. The Appellate Division concluded that the remark may have been improper, but "agree[d] with the trial court that any potential prejudice was eliminated by the clarifying redirect questioning, and further ameliorated by the jury instructions." *Id.*

"The 'clearly established Federal law' in this area is largely undisputed." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *United States v. Perez*, 22 U.S. 579, 580 (1824)). "The decision to declare a mistrial is left to the sound discretion of the judge, but the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Id.* at 774 (internal quotation marks omitted). "[A] mistrial is appropriate when there is a 'high degree' of necessity." *Id.* (quoting *Arizona v. Washington*, 434 U.S. 497, 507 (1978)). "A mistrial is not necessary where the improper remarks were harmless, 'considering their scope, their relation to the context of the trial, the ameliorative effect of any curative instructions and the strength of the evidence supporting the conviction.'" *United States v. Lee*, 634 F. App'x 862, 865 n.2 (3d Cir. 2015) (quoting *United States v. Rivas*, 493 F.3d 131, 140 (3d Cir. 2007)).

13

The Appellate Division applied New Jersey state law when it reviewed the trial court's denial of Petitioner's mistrial motions, acknowledging the decision was left to the discretion of the trial court and should be granted only when necessary to prevent a manifest injustice.  *Suarez I*, 2008 WL 834323, at *13 (citing *State v. DiRienzo*, 53 N.J. 360, 383 (1969)).  As this standard mirrors the *Perez* standard, this Court concludes that the Appellate Division's decision was not contrary to clearly established federal law.

The Appellate Division's adjudication of this claim was also not an unreasonable application of clearly established federal law.  Olivero's remark was brief, and the Appellate Division reasonably concluded that "any potential prejudice was eliminated by the clarifying redirect questioning, and further ameliorated by the jury instructions."  *Id.*  Olivero identified Parraguez as the "certain person" during his redirect testimony, so there was no need for the jury to speculate.  The trial court also issued instructions about what testimony could be considered, and "[a] jury is presumed to follow a court's instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant."  *United States v. Savage*, 85 F.4th 102, 125 (3d Cir. 2023) (internal quotation marks omitted); *see also Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987). Petitioner has not presented evidence of either "an overwhelming probability" that the jury was unable to follow the trial court's directions, or that there is a strong likelihood that Olivero's brief, off-hand remark was "devastating" to Petitioner considering all the other evidence against him.[9]

---

[9] "During the course of the trial in the current matter, the jury was presented with Petitioner's confession explaining that he shot the victim in the head, evidence that the murder weapon was discovered in Petitioner's safe the day after the shooting, eyewitness identification testimony, and

14

*See Suarez I*, 2008 WL 834323, at *5.  These considerations support the Appellate Division's decision.

Accordingly, the Court will **DENY** habeas relief on Ground Two.

### C.  Trial Counsel Was Not Ineffective for Failing to Call Paul Guillen as a Witness

In Ground Three, Petitioner alleges that trial counsel was ineffective for failing to call Guillen as a witness during the motion to suppress and trial.  Pet. at 24.  According to Petitioner, Guillen told a defense investigator that "police approached him and asked him for the key to the [P]etitioner's residence because [Guillen] was the owner at the time, to which he complied with their request by giving the officers the key."  *Id.*  Petitioner also asserts that Guillen's statement called into question Owsiany's testimony that Owsiany did not damage the rear door by forcing it open because "it was not locked but swollen from the swelling of the wood."  *Id.*; 1Tb138:16-17.

The Appellate Division summarily denied this argument during Petitioner's PCR appeal. *Suarez II*, 2016 WL 1689724, at *1 (citing N.J. Ct. R. 2:11–3(e)(1)(E)).  "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (quoting *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)).  Here, the Court "look[s] through" the Appellate Division's summary denial and applies AEDPA's standards to the PCR court's determination.  *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).  The Court "presume[s] that the unexplained decision adopted the same reasoning."  *Id.*

To succeed on his ineffective assistance claim, Petitioner must first "show that counsel's representation fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466

---

proof that Petitioner was involved in a car accident with the victim moments before the shooting.
D.E. 9-5 at 80.

U.S. 668, 688 (1984). He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The PCR court correctly identified *Strickland* as the governing federal law on this claim. D.E. 9-5 at 76-77. Therefore, the PCR court's decision was not contrary to established federal law.

The "pivotal question" in a section 2254 *Strickland* claim "is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). This Court's review is thus "doubly deferential[.]" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The Court finds that the PCR court reasonably applied *Strickland* in denying this claim. The PCR court held that Petitioner failed to identify the witness whose testimony should have been presented and how that witness's testimony would have aided his defense. D.E. 9-5 at 78. "Absent a proffer as to same, Petitioner's claim that trial counsel was ineffective in failing to subpoena and elicit testimony from 'a favorable witness' remains wholly unsubstantiated." *Id.* This is a reasonable application of *Strickland*.

A petitioner cannot satisfy *Strickland*'s prejudice prong when he asks the court to "speculate . . . as to what [the witness's] testimony would have been," instead of presenting the court with sworn testimony from that witness. *Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001). "Under usual circumstances, we would expect that such information would be presented to the habeas court through the testimony of the potential witnesses. 'Complaints of uncalled

16

witnesses are not favored in federal habeas review.'" *U.S. ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987) (quoting *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984)); *see also Ali v. Nogan*, No. 13-7364, 2016 WL 8678443, at *7 (D.N.J. Apr. 1, 2016) ("Here, Ali's failure to include a sworn statement regarding the nature of this witness's proposed testimony is fatal to his making a *prima facie* showing of prejudice."). Although Petitioner did identify Guillen as the "favorable witness" in his *pro se* brief, D.E. 9-5 at 97, the PCR court reasonably concluded that the failure to submit a sworn statement from Guillen doomed Petitioner's ineffective assistance of counsel claim. The Court will accordingly **DENY** habeas relief for this claim.

### D.  Petitioner Cannot Obtain Habeas Relief for Alleged Ineffective Assistance of PCR Counsel

In Grounds Four and Five, Petitioner argues that his first PCR counsel was ineffective for failing to raise certain claims regarding Petitioner's trial and appellate counsel. Pet. at 25-29. He also argues first PCR counsel was ineffective for failing to raise the *Davila* Argument. *Id.* at 27-28. However, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Therefore, the Court will **DENY** Grounds Four and Five to the extent they allege ineffective assistance of first PCR counsel. The Court considers the actions of the first PCR counsel only to the extent they may constitute cause for procedural default as discussed *infra*, Part III.E.

### E.  Petitioner Has Procedurally Defaulted on His Warrant and Entry Arguments

Respondent argues Petitioner procedurally defaulted on the Warrant and Entry Arguments set forth in Grounds Four and Five, preventing this Court from addressing the merits. D.E. 24 at 2-3.

The procedural default doctrine provides that "federal courts generally decline to hear any federal claim that was not presented to the state courts 'consistent with [the State's] own procedural rules.'" *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (alteration in original) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).  It "prohibits federal courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment." *Fahy v. Horn*, 516 F.3d 169, 187 (3d Cir. 2008).

"[T]he state procedural law invoked by the state court must be firmly established and regularly followed." *Massenburg v. Davis*, 704 F. Supp. 3d 540, 553 (D.N.J. 2023).  "[N.J. Ct. R.] 3:22-12, speaks in unmistakable terms requiring any challenge to a sentence to be filed within five years of the sentencing proceeding." *Johnson v. Pinchak*, 392 F.3d 551, 559 (3d Cir. 2004).  "New Jersey courts have generally applied the time bar set forth in [N.J. Ct. R.] 3:22-12 so that this rule can fairly be said to have been firmly established and regularly followed." *Id.* at 561.  Petitioner's second PCR petition presented the Warrant and Entry Arguments to the state courts for the first time.  D.E. 24-2 at 89.  The state courts did not address the merits of the Warrant and Entry Arguments because they concluded the second PCR petition was untimely under state law.  D.E. 24-5 at 3-4 (citing N.J. Ct. R. 3:22-12).  Therefore, the Warrant and Entry Arguments are procedurally defaulted.

"[O]nly rarely may a federal habeas court hear a claim or consider evidence that a prisoner did not previously present to the state courts in compliance with state procedural rules." *Shinn*, 596 U.S. at 375-76.  "'Out of respect for finality, comity, and the orderly administration of justice,' federal courts may excuse procedural default only if a prisoner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.'" *Id.* at 379 (first

quoting *Dretke v. Haley*, 541 U.S. 386, 388 (2004), then quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

To establish cause, Petitioner "must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"  *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Petitioner argues that the ineffective assistance of trial and appellate counsel claims presented in the Warrant and Entry Arguments were not presented in his first PCR petition due to the ineffective assistance of his first PCR counsel.  Supp. Reply at 5.  "With respect to cause, '[a]ttorney ignorance or inadvertence' cannot excuse procedural default."  *Shinn*, 596 U.S. at 380 (alteration in original) (quoting *Coleman*, 501 U.S. at 750).  However, there is a narrow exception providing that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

1. *Petitioner has not shown cause for procedurally defaulting on his ineffective assistance of appellate counsel claims*

Although *Martinez* allows PCR counsel's ineffectiveness to excuse a default of an ineffective assistance of trial counsel claim, the Supreme Court declined to extend the *Martinez* exception to excuse procedural default based on PCR counsel's failure to raise appellate counsel's failure to raise a claim of trial court error.  *Davila v. Davis*, 582 U.S. 521 (2017).  "If an unpreserved trial error was so obvious that appellate counsel was constitutionally required to raise it on appeal, then trial counsel likely provided ineffective assistance by failing to object to it in the first instance."  *Id.* at 533.  The Court will accordingly **DENY** as procedurally defaulted Petitioner's ineffective assistance of appellate counsel claims.

      2.   *Petitioner has not shown trial counsel was ineffective for failing to raise the Warrant Argument*

To determine whether *Martinez* excuses Petitioner's procedural default of the Warrant Argument, the Court must first "decide whether an underlying ineffectiveness claim succeeds considering only the state court record.  If not, federal courts should deny relief without more." *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723-24 (3d Cir. 2022) (citing *Shinn*, 596 U.S. at 390).  The Court has reviewed the state court record and concludes that Petitioner cannot succeed on his Warrant Argument ineffective assistance of trial counsel claim.  Therefore, *Martinez* does not excuse the procedural default, and the Court will **DENY** the claim.

Petitioner argues that trial counsel should have challenged Owsiany's veracity in the affidavit for the search warrant pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (holding a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant).  Pet. at 25; Supp. Reply at 8.  He asserts Owsiany "intentionally gave false statements to the Judge who issued the search warrant, and the fact that those intention [sic] false statements supported the Judge's finding of probable cause, the warrant must be voided and the evidence suppressed . . . ."  Pet. at 25.  He argues Owsiany did not personally observe all the activities set forth in the affidavit and "all of the statements used to determine probable cause, that were knowingly and intentionally falsely made by Detective Owsiany, were allegedly told to him by other Detectives who were not present during the application for the search warrant . . . ."  Supp. Reply at 11.

To be entitled to a *Franks* hearing, Petitioner "must first make 'a substantial preliminary showing' that the affidavit contained a false statement or omission that (1) was made knowingly and intentionally, or with reckless disregard for the truth, and (2) was material to the finding of

probable cause." *United States v. Aviles*, 938 F.3d 503, 508 (3d Cir. 2019) (citing *Franks*, 438 U.S. at 155-56). "In order to make this preliminary showing, the defendant cannot rest on mere conclusory allegations or a mere desire to cross-examine, but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." *United States v. Yusuf*, 461 F.3d 374, 383 n.8 (3d Cir. 2006) (internal quotation marks omitted).

Petitioner has not presented this proof; he offers only cursory allegations and speculation. This is not enough for a *Franks* hearing. "[I]f [Petitioner] cannot show that he [was] entitled to a *Franks* hearing, he necessarily cannot show that his motion to suppress should have been granted." *Aviles*, 938 F.3d at 509. Therefore, Petitioner has not shown that trial counsel was ineffective for failing to make the Warrant Argument in the trial court. Because his ineffective assistance of counsel claim fails on the state court record, *Martinez* does not excuse the procedural default. *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723-24 (3d Cir. 2022). The Court will therefore **DENY** the claim.

> 3. *Petitioner has not shown trial counsel was ineffective for failing to raise the Entry Argument*

Petitioner's final argument is that trial counsel was ineffective by failing to sufficiently argue that the initial, warrantless entry and a resulting protective sweep were improper and for failing to obtain testimony from Guillen in connection with that entry. Pet. at 27-29.[10] The Entry Argument is essentially the same as the Fourth Amendment claim in Ground One and the ineffective assistance of counsel claim in Ground Three. *See* Pet. at 21, 24. As the Court previously held, the Fourth Amendment claim is barred by *Stone v. Powell*, 428 U.S. 465 (1976),

---

[10] The Court dismissed the *Davila* Argument in Ground Five *supra*, Part III.D.

and Petitioner has not shown that trial counsel was ineffective for failing to have Guillen testify at the motion to suppress and during trial. *See supra*, Part III.A, C. Because Petitioner's ineffective assistance of counsel claim fails on the state court record, *Martinez* does not excuse the procedural default. *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 723-24 (3d Cir. 2022). The Court will **DENY** the claim.

## IV.    CERTIFICATE OF APPEALABILITY

AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a section 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's resolution of his claims either procedurally or on the merits, the Court will deny Petitioner a certificate of appealability.

## V.    CONCLUSION

For the reasons stated above, the Court will **DENY** Grounds One, Two, and Three. Grounds Four and Five are **DENIED in part** and **DENIED AS PROCEDURALLY DEFAULTED in part**. The Court **DENIES** a certificate of appealability. An appropriate Order will follow.

**9/5/2024**
Date

Evelyn Padin, U.S.D.J.